IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01321-MSK-BNB

FLOYD'S 99 HOLDINGS, LLC, a Colorado limited liability company,

        Plaintiff,

v.

SHAWN W. WOODRUM,

        Defendant.

---

**OPINION AND ORDER DENYING MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court on Defendant Shawn W. Woodrum's Motion to Dismiss **(#16)**, Plaintiff Floyd's 99 Holdings, LLC's Response **(#24)**, and Defendant's Reply **(#25)**.

## FACTS

According to the Complaint **(# 1)**, the Plaintiff ("Floyd's 99") operates a chain of "retail hair care businesses," which it describes as "the 'hip' modern version of a traditional walk-in service barbershop." Floyd's 99 began its operations in Denver, Colorado in or about 1998, and currently has 26 locations in 5 states and two countries. As early as January 2000, Floyd's 99 was using several marks, including "Floyd's 99" and the text "Barbershops for Men & Women Floyd's 99 Old School. New Styles," incorporated into a logo similar to a police badge. Floyd's 99 registered a mark consisting of its logo and accompanying text with the United States Patent and Trademark Office ("USPTO"), effective August 12, 2003, and its "Floyd's 99" mark with the USPTO effective February 28, 2006.

1

The Defendant, Shawn W. Woodrum, operates a single barber shop in Buena Vista, Colorado, using the name "Floyd's Barber Shop." Although the Complaint does not specifically allege the date, other than to state that it was after Floyd's 99 began using its marks in interstate commerce, Mr. Woodrum contacted Floyd's 99 to inform it of his own use of the name "Floyd's." Floyd's 99 states that it "observed [Mr. Woodrum's] business and found it to be of a very small scale," thematically different from Floyd's 99's operations, and located more than 120 miles from Floyd's 99's operations. The Complaint alleges that, despite the differences between the parties' operations, Mr. Woodrum "has sought to cancel" Floyd's 99's marks.

The Complaint asserts three claims for relief: (i) a claim for a declaratory judgment that Floyd's 99's marks "are not likely to cause confusion with the Defendant's use of the name 'Floyd's Barber Shop,' . . . so as to warrant the cancellation of" Floyd's 99's marks; (ii) a claim for a declaratory judgment that Mr. Woodrum "is barred by the doctrine of laches from enforcing" any claim he may have to the use of the a mark containing the word "Floyd's," by virtue of his inaction to enforce his own use of such a mark since May 2001; and (iii) an "alternative" claim for a declaratory judgment that "Plaintiff may concurrently use the Floyd's 99 marks with the Defendant's use of the name 'Floyd's Barber Shop'," so long as Mr. Woodrum limits such use to Buena Vista, Colorado.

On August 14, 2008, Mr. Woodrum filed a Motion to Dismiss **(#16)**. Mr. Woodrum's motion does not expressly cite a basis for seeking dismissal. Rather, the motion largely seeks to argue the relative merits of the action. Mr. Woodrum's motion asserts numerous additional facts beyond those found in the Complaint, most pertinently, that Mr. Woodrum registered the mark "Floyd's Barber Shop" with the State of Colorado as early as 2001, prior to Floyd's 99's

2

registration of its marks, and that in May 2008, Mr. Woodrum commenced proceedings with the USPTO's Trademark Trial and Appeal Board ("TTAB") to cancel Floyd's 99's marks.[1]  Mr. Woodrum's motion proceeds to argue that (i) Mr. Woodrum's use of the name "Floyd's" predates the Plaintiff's use; (ii) there is a likelihood of confusion between the parties' use of their marks; (iii) "the court should not exercise jurisdiction over this case because there is no actual case or controversy," and cites *Surefoot LC v. Surefoot Corporation*, 531 F.3d 1236 (10th Cir. 2008), for the proposition that a single petition to the USPTO to cancel a trademark is insufficient to demonstrate a "case or controversy" giving rise to judicial intervention; and (iv) Mr. Woodrum's petition to cancel the Plaintiff's marks was timely filed.

## ANALYSIS

### A. Standard of review

As noted, the bulk of Mr. Woodrum's motion involves arguments as to the merits of Floyd's 99's substantive claims for relief, and thus, are not properly the subject of a motion to dismiss.  At best, Mr. Woodrum raises a single argument that the Court lacks jurisdiction to hear this matter because no "case or controversy" exists.  The Court construes this argument to seek dismissal for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

The party asserting the existence of subject matter jurisdiction– in this case, Floyd's 99 – bears the burden of proving such jurisdiction exists. *Montoya v. Chao*, 269 F.3d 952, 955 (10th Cir. 2002).  Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the

---

[1] The grounds asserted in Mr. Woodrum's petition for cancellation – that both his use and reigstration of the mark "Floyd's" predate Floyd's 99's use and registration of its own marks, that there is a likelihood of confusion from the use of the competing marks – are identical to the issues that will be resolved in this action.

sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts underlying the plaintiff's invocation of subject matter jurisdiction *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir.1995). Where a Rule 12(b)(1) motion challenges the sufficiency of the jurisdictional allegations on the face of the complaint as true and adjudicates whether those allegations are sufficient to demonstrate the existence of subject matter jurisdiction. *Paper, Allied-Industrial, Chemical and Energy Workers Intl. Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). On the other hand, if the motion challenges the accuracy of the facts underlying the plaintiff's invocation of federal jurisdiction, the Court may not presume the truthfulness of the complaint's factual allegations; rather, the Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.; Sizova v. National Institute of Standards and Technology*, 282 F.3d 1320,1324 (10th Cir. 2002). Where the factual disputes underlying the jurisdictional question are intertwined with the facts of the substantive claim, the Court must instead convert the motion to one under Fed. R. Civ. P. 12(b)(6) or 56. *Id.*

Here, Mr. Woodrum's motion challenges the sufficiency of the facts underlying Floyd's 99's invocation of federal subject matter jurisdiction. Mr. Woodrum contends that the true context of the parties' historical dealings and the nature of the current conflict between them – facts adduced more clearly in his own motion – demonstrates that no "case or controversy" exists to permit a declaratory judgment action in federal court. Accordingly, the Court does not presume the jurisdictional facts pled in the Complaint to be true, and may consider factual matters beyond those alleged in the Complaint. Ultimately, however, Floyd's 99 does not appear

4

to dispute the key supplemental facts set forth by Mr. Woodrum's motion, and thus, as explained below, the parties' jurisdictional dispute is one presenting primarily a question of law, not fact. *See Surefoot*, 531 F.3d at 1240.

**B. The Declaratory Judgment Act**

All of Floyd's 99's claims are asserted solely under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). That statute provides that "In a case of actual controversy, [the Court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." To demonstrate the Court's jurisdiction to hear claims arising under this Act, Floyd's 99 must show: (i) there in a "actual controversy" between the parties, akin to that encompassed by the "case or controversy" requirement in Article III, § 2 of the U.S. Constitution; and (ii) because the Act permits the Court to exercise discretion in deciding whether to grant declaratory relief, that it is an appropriate exercise of the Court's discretion to do so in the particular circumstances presented. *See Surefoot*, 531 F.3d at 1240.

1. Case or controversy requirement

The "case or controversy" element was most recently addressed by the Supreme Court in *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007). There, the plaintiff entered into a licensing agreement with the defendant to manufacture drugs covered by the defendant's patents. The defendant later wrote to the plaintiff, asserting that a new drug being manufactured by the plaintiff implicated one of the defendant's patents, and insisted that the plaintiff pay royalties on sales of that drug under the parties' agreement. The plaintiff believed that the patent was invalid and that the drug in question was not subject to the licensing agreement, but was unwilling to

5

risk the potential consequences of breaching the agreement. Thus, the plaintiff paid the demanded royalties "under protest," and subsequently, commenced a declaratory judgment action, seeking a determination as to whether the license agreement required payment of royalties on the challenged drug. *Id.* at 121-22.

In considering whether this state of facts presented a "case or controversy" sufficient to satisfy the requirements of the Act (and concomitantly, the U.S. Constitution), the Court explained that a case sufficient to permit a demand for declaratory relief must be one which is "definite and concrete, touching the legal relations of parties having adverse interests," and that it "admit of specific relief through a decree of a conclusive character," rather than being one in which the court would merely be "advising what the law would be upon a hypothetical state of facts." *Id.* at 127. "Basically," the Court explained, "the question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Looking at the particular facts of the case, the Court noted that "The factual and legal dimensions of the dispute are well defined," and that the only impediment to there being a fully-matured controversy was the plaintiff's decision to pay the demanded royalties "under protest." *Id.* at 128. Examining its precedents that typically found a case or controversy to exist when a dispute would otherwise be ripe, but for a party's involuntary or coerced capitulation to the other's demands, the Court found that the plaintiff "was not required, insofar as [the case or controversy requirement] is concerned, to break or terminate [the license agreement] before seeking a declaratory judgment." *Id.* at 137.

Shortly after *MedImmune,* the 10th Circuit had cause to examine that decision's effect on

the "case or controversy" requirement in *Surefoot*, a case involving similar facts to those presented here. In *Surefoot*, the defendant manufactured products under the federally-registered mark "Sure Foot," while the plaintiff sold other products under the mark "Surefoot." The defendant demanded that the plaintiff cease use of the mark, and the plaintiff insisted that the parties' products were sufficiently distinct that no likelihood of confusion existed. 531 F.3d at 1238-39. A period of negotiations ensued, with the defendant initially making veiled threats of litigation. *Id.* at 1239. When the negotiations failed, the plaintiff federally registered the "Surefoot" mark with regard to its own products, and the defendant then moved to cancel that registration with the TTAB. *Id.* The plaintiff sought to register four more related trademarks, which the defendant formally protested, and the parties ultimately consolidated all of their disputes before the TTAB into a single proceeding. *Id.* Believing that the defendant would both oppose its future trademark applications and would actively commence infringement litigation, the plaintiff then commenced an action seeking a declaration that its use of the mark was not infringing, that the mark claimed by the defendant was invalid, and that any claim for infringement the defendant might bring would be untimely. *Id.* The District Court granted the defendant's motion to dismiss the case on jurisdictional grounds, finding that the plaintiff had not alleged an apprehension of imminent suit because the only threats of litigation by the defendant had occurred in initial negotiations years ago and the parties' pending proceedings before the TTAB did not raise the specter of imminent litigation. *Id.*

On appeal, the 10th Circuit reversed. It first observed that the "imminent suit" requirement, although previously the law of the Circuit, was displaced by *MedImmune*. *Id.* at 1241. Acknowledging the wisdom of *MedImmune*, the 10th Circuit explained that the focus of

7

the case or controversy question should not be "a judicial wager on the chances the parties will sue one another," but rather, whether the facts "suggest an extant controversy between the parties or whether instead they merely call on us to supply an advisory opinion about a hypothetical dispute." *Id.* (parenthetical omitted). The court went on to consider whether a case or controversy, as defined by *MedImmune*, existed under the facts presented. It noted that the parties, through negotiations, had staked out their relative positions as to the similarity of marks and the likelihood of confusion; that the defendant had threatened litigation in the past; and that the parties were involved in a present dispute over the validity of various marks in proceedings before the TTAB. *Id.* Under these circumstances, the court stated that it "cannot help by conclude that the parties before of has a dispute that is definite and concrete," sufficient to support a claim for declaratory judgment. The court rejected the defendant's argument that the threats of litigation were too remote in time, finding that the defendant had never disclaimed its earlier threats of litigation and, in any event, had "rekindled" them by engaging in activity before the TTAB that "signal[ed] its belief that [the plaintiff] continues to infringe its trademark." *Id.* at 1246. The court also distinguished caselaw cited by the defendant for the proposition that administrative proceedings before the TTAB were irrelevant to the case or controversy determination. It recognized that "a party may oppose a trademark registration for reasons having nothing to do with any infringement dispute," but noted that in other situations, they are "indicative of, or even a proxy fight for, an underlying infringement dispute." *Id.* It observed that refusing to consider the pendency of administrative proceedings would ignore *MedImmune*'s requirement that the court consider "all the circumstances" when determining if a controversy existed. *Id.*

8

At least as to the first element of the jurisdictional test – whether a case or controversy exists – *Surefoot* is practically dispositive of the question presented by the parties here. As in that case, Floyd's 99 and Mr. Woodrum have staked claims to similar, if not essentially identical marks; both parties have expressed a belief that the other's use of the mark infringes upon their rights; Mr. Woodrum has previously threatened litigation[2] for trademark infringement against Floyd's 99; and the parties are currently involved in TTAB proceedings seeking cancellation of Floyd's 99's marks as infringing upon Mr. Woodrum's mark. As under the effectively identical facts in *Surefoot*, it is abundantly clear that the parties here have a particularized and concrete trademark dispute that could be resolved by relief of a conclusive character, such that the "case or controversy" requirement is satisfied.

Floyd's 99 argues that this case is distinguishable from *Surefoot* by virtue of the fact that such case involved five separate issues before the TTAB, whereas this case presents only one. It points to language in *Surefoot* in which the 10th Circuit declined to address "a case where the only indicia of a live infringement controversy is the existence of a single TTAB opposition proceeding," and expressly limited its holding to "this combination" of "five separate TTAB oppositions combined with an extensive history of interactions between the parties." *Id.* at 1247. This argument is without merit. Admittedly, this case does not involve five separate TTAB issues, as did *Surefoot*, but it is also not a case in which the "only indicia" of a controversy is a

---

[2]In a letter dated May 1, 2001, Mr. Woodrum wrote the Floyd's 99, directing it to "immediately cease and desist any use whatsoever of the trade mark 'Floyd's Barber Shop'," and that should Floyd's 99 refuse, "I will pursue every course and remedy allowed under the law." *Docket* # 16, Ex. 6.

"single TTAB opposition proceeding"³ of uncertain significance. It is abundantly clear, from the Complaint and the additional facts in Mr. Woodrum's motion, that the TTAB proceeding between the parties here is not an indirect or collateral point of contention between the parties, but rather, the culmination of a longstanding, well-documented dispute over the parties' relative entitlement to the use of the "Floyd's" mark. The 10th Circuit's opinion in *Surefoot* makes clear that the court was not concerned that the <u>quantity</u> of TTAB proceedings would be probative of the existence of a genuine controversy, but rather, it was the <u>qualities</u> of those proceedings that indicated whether a controversy existed. *See* 531 F.3d at 1246 ("because a party may oppose a trademark registration for reasons having nothing to do with any infringement dispute between the trademark applicant and opponent, courts should not take a TTAB opposition filing, automatically and by itself, to be conclusive evidence of the existence of a live infringement dispute"); at 1247 ("One might worry, for example, whether the filing of a single TTAB opposition without a hint of an infringement claim should hold much sway in a jurisdictional analysis").

Here, although the parties are engaged in only a single proceeding before the TTAB, it is abundantly clear that that proceeding strikes to the very heart of an assertion by Mr. Woodrum

---

³One might draw a distinction between a "TTAB opposition proceeding" under 15 U.S.C. §1063 and the parties' proceedings to cancel a registration under 15 U.S.C. § 1064. In *W. D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 377 F.2d 1001, 1003 (Ct. Cust. & Pat. App. 1967), the Court of Patent Appeals stated that "the petitioner in a cancellation proceeding bears a much heavier burden of proof than the opposer in an opposition proceeding." However, that same court appears to have subsequently backed away from sharply distinguishing the types of proceedings, at least when the ground for opposition/cancellation is a likelihood of confusion between similar marks. *Massey Junior College, Inc. v. Fashion Institute of Technology*, 492 F.2d 1399, 1402-04 (Ct. Cust. & Pat. App. 1974). Accordingly, for purposes of this issue, this Court will assume that a "single TTAB opposition proceeding" and a single TTAB proceeding seeking cancellation of a registration are effectively identical.

that Floyd's 99's marks infringe upon his own. The existence of that proceeding, coupled with the parties' extensive history of confrontation and negotiation concerning their competing marks and Mr. Woodrum's prior threat of litigation, sufficiently demonstrates the existence of a case or controversy sufficient to support invocation of the Declaratory Judgment Act.

        2. <u>Discretionary considerations</u>

A more delicate question is framed by the second element of the jurisdictional test – that consideration of a claim for declaratory relief is an appropriate exercise of the Court's jurisdiction. Mr. Woodrum's original motion[4] does not clearly distinguish between disputes as to the existence of a case or controversy and disputes as to whether the Court should exercise its discretion to hear a declaratory judgment action, but in the interests of completeness, the Court will proceed to consider the appropriateness of its exercise of discretion as well.

*Surefoot* explains that, "once the court is satisfied that Article III's jurisdictional requirements are met, it must then consider a number of factors . . . to determine whether the suit warrants the court's attention." *Id.* at 1248. Among the factors that this Court is required to consider are: (i) whether a declaratory action would settle the controversy; (ii) whether it would serve a useful purpose in clarifying the legal relations at issue; (iii) whether the declaratory remedy is being used "merely for the purpose of 'procedural fencing' or 'to provide an arena for

---

    [4]Mr. Woodrum raises, for the first time in his reply brief, an argument that his limited resources would permit him to pursue the administrative cancellation proceeding, but not a litigation case in the judicial sphere. Assuming this is an argument directed at the discretionary aspect of the Court's jurisdiction, the Court nevertheless finds it to be without merit. Besides being improperly raised for the first time in reply, *see generally Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007), the Court notes that the argument is offered in purely conclusory terms, with no specific discussion (much less supporting evidentiary presentation) of the nature of Mr. Woodrum's resources or the relative costs of presenting this matter to the TTAB and to this Court.

a race to 'res judicata'"; (iv) whether the declaratory action would improperly encroach upon state jurisdiction; and (v) whether there is an alternative remedy that is better or more effective. *Id.* at 1248, *citing State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994).

In the context of the factually-similar *Surefoot* case, the 10th Circuit briefly considered this more difficult question, but ultimately elected to remand the matter for further consideration by the District Court. *Id.* at 1248. Nevertheless, it noted with particular concern the question of "what weight" the pending TTAB proceedings "deserve:"

> One might worry, for example, whether the filing of a single TTAB opposition without a hint of an infringement claim should hold much sway in a jurisdictional analysis. One might also be concerned about what assuming jurisdiction in cases where ongoing TTAB proceedings exist might mean as a practical matter; at least one commentator has suggested that the "real policy" undergirding the case law cited by Sure Foot ND for disregarding the existence of TTAB proceedings has nothing to do with Article III but with a more practical concern "not to short-circuit the administrative tribunal that has already achieved jurisdiction over the issues" separating the parties.

*Id.* at 1247.

In ordinary circumstances, this Court would likely decline to exercise its discretion to consider Floyd's 99's declaratory claims, largely on the ground that this is clearly a matter of "procedural fencing." Mr. Woodrum filed his petition with the TTAB to cancel Floyd's 99's marks on or about May 15, 2008; Floyd's 99 commenced this action on June 20, 2008. Although Floyd's 99 knew about the potential conflicting marks for many years, it had chosen to take no action to clarify the status of matters until Mr. Woodrum preemptively sought cancellation. The declarations that Floyd's 99 seeks in this case are effectively identical to the issues that the TTAB will consider in determining whether the cancel the marks. Under these

circumstances, it is clear to the Court that Floyd's 99 brings this action solely to obtain a procedural advantage in the TTAB proceedings, such that any determination by the Court here will act as *res judicata* on Mr. Woodrum's claims there. This is precisely the sort of "short-circuit[ing] the administrative tribunal" about which the 10th Circuit in *Surefoot* expressed concern.

However, Floyd's 99 moved the TTAB to stay further proceedings in that action until the substantive matters could be resolved in this action, and by Order dated August 14, 2008, the TTAB granted that request.[5] As a result, the Court is less concerned that exercising its discretion to hear this matter will "short-circuit" the TTAB's consideration of the case. To the contrary, it appears that the TTAB intends to defer to this Court's consideration of the issues. Under these circumstances, there is less justification for the Court to decline jurisdiction in order to prevent "procedural fencing".

Once that factor is removed from the equation, it is apparent that the remainder of the *Mhoon* factors warrant the Court's exercise of discretion to hear the claims here. Resolution of the issues raised by the Floyd's 99 will, at minimum, clarify the legal relations of the parties, if not outright resolve the trademark controversy between them. Although Mr. Woodrum holds a trademark registered under Colorado law, it is by no means apparent that Floyd's 99's claims for declaratory relief will result in any "friction" between state and federal interests in this case. Conflicts between trademark protections afforded by state registration of one mark and federal registration of a similar mark by another party are not novel, and an established body of caselaw

---

[5]Apparently, Mr. Woodrum did not contest Floyd's 99's request, as the motion was "granted as conceded."

instructs as to how such conflicts should be resolved. *See generally Spartan Food Systems, Inc. v. HFS Corp.*, 813 F.2d 1279, 1284 (4th Cir. 1987) *and cases cited therein.* Finally, short of the TTAB electing the hear this matter administratively, the Court finds that there is no more effective means of adjudicating the parties' dispute than through the case presented here. The pendency of this action does not prevent Mr. Woodrum from asserting any counterclaims under state or federal law that he may have against Floyd's 99, and thus, this action provides a mechanism by which both parties can finally and conclusively resolve the entirety of their dispute over the marks. Accordingly, the Court finds that it is appropriate to exercise its discretion to hear the declaratory claims asserted in this case.

## CONCLUSION

For the foregoing reasons, Mr. Woodrum's Motion to Dismiss **(# 16)** is **DENIED**.

Dated this 24th day of March, 2009

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge